**E-FILED**
Monday, 28 December, 2009  03:59:57 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

WILLIAM J. KEHOE,                    )
                                     )
     Petitioner,                    )
                                     )
     v.                             )     Case No. 08-1152
                                     )
NEDRA CHANDLER, Warden,              )
                                     )
     Respondent.                    )

## <u>O R D E R</u>

Now before the Court is Petitioner, William Kehoe's ("Kehoe"), Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the Petition [#1] is DENIED.

### <u>FACTUAL BACKGROUND</u>

Following a bench trial in the Circuit Court of Livingston County, Illinois, Kehoe was found guilty of the predatory criminal sexual assault of his stepdaughter.  On January 6, 2005, he was sentenced to six years' imprisonment. On appeal, the Illinois Appellate Court affirmed his conviction and sentence, and Kehoe's Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court was denied.

On June 20, 2006, Kehoe filed a pro se post-conviction petition in the Livingston County Circuit Court in which he argued that his trial counsel was ineffective for failing to call alibi witnesses at trial.  Following an evidentiary hearing, his petition was denied.  On appeal, the Illinois Appellate Court found that the Circuit Court had not erred in concluding that Kehoe had failed to establish a reasonable probability that the result of his trial would

have been different if his purported alibi evidence had been presented.  As he failed to demonstrate prejudice, the denial of his post-conviction petition was affirmed.  Kehoe's PLA to the Illinois Supreme Court was also denied.

Kehoe then filed the present Petition for Writ of Habeas Corpus pursuant to § 2254. In this Petition, he argues: (1) he received ineffective assistance of counsel when counsel failed to present his alibi defense, and (2) he was denied due process and the right to confront witnesses against him where the trial judge made conclusions regarding the credibility of Kehoe's stepdaughter based on his own personal notions of how child sexual abuse victims behave rather than on any expert testimony.  This Order follows.

## LEGAL STANDARD

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, a district court must consider "whether the petitioner exhausted all available state remedies and whether the petitioner raised all his federal claims during the course of the state proceedings."  Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991), quoting Henderson v. Thieret, 859 F.2d 492, 496 (7th Cir. 1988).  If the answer to either of these questions is "no," then the failure to exhaust state remedies or procedural default bars the petition.  Id.  In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail.  Bocian v. Godinez, 101 F.3d 465, 468-69 (7th Cir. 1996).

Exhaustion of a federal claim occurs when it has been presented to the highest state court for a ruling on the merits or when it could not be brought in state court because a remedy no longer exists when the federal petition is filed.  Id.  In the present case, Respondent does not argue that Petitioner has failed to exhaust his state remedies.

Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal petition is filed, be presented to the state court.  Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1992).  This occurs in one of two ways.  First, a procedural default may occur when a petitioner fails to pursue each appeal required by state law, Jenkins v. Gramley, 8 F.3d 505, 507-08 (7th Cir. 1993), or when he did not assert the claim raised in the federal habeas petition in the state court system.  Resnover, 965 F.2d at 1458-59.  The second way in which a petitioner may procedurally default a claim is when a state court disposes of the case on an independent and adequate state law ground, regardless of whether that ground is substantive or procedural.  Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2553-55 (1991).

Federal review is barred for claims that are procedurally defaulted unless the petitioner can demonstrate cause and prejudice.  Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 1572-73 (1982); Farrell, 939 F.2d at 411.  Review in federal court is also possible if a fundamental miscarriage of justice would otherwise occur in that a constitutional error probably resulted in the conviction of someone who is actually innocent.  Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 864-67 (1995).

With respect to claims that are not barred either for failure to exhaust or procedural default, federal courts must employ a strict analysis.  A petition must be denied with respect to any claim previously adjudicated on the merits in a state court unless the decision of the state court:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  *See also* <u>Lindh v. Murphy</u>, 96 F.3d 856, 868-71 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059 (1997).

Subsection (d)(1) instructs that Supreme Court precedent governs legal questions. <u>Id.</u> at 869.  In resolving mixed questions of law and fact, relief is unavailable unless "the state's decision reflects an unreasonable application of the law," meaning federal courts are to have a hands-off attitude unless the state court judgment is premised on an unreasonable error.  <u>Id.</u> at 870 (internal quotation marks omitted).  A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong."  <u>Id.</u> at 871, 876-77.  Subsection (d)(2) pertains to a decision constituting an unreasonable determination of the facts, and, according to 28 U.S.C. § 2254(e)(1), factual issues are presumed to be correctly resolved.  A petitioner must rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## DISCUSSION

As set forth above, Kehoe presents two different claims for relief.  Respondent does not argue that either of the claims has been procedurally defaulted.  Accordingly, the state court ruling must be shown to have been either "contrary to" or an unreasonable application of the clearly established law of the United States Supreme Court, or premised on an unreasonable determination of the facts in order to warrant habeas relief.

- 4 -

I.      Ineffective Assistance of Counsel

The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88.  The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690.  A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail.  United States v. Delgado, 936 F.2d 303, 311 (7th Cir. 1991).

Given the procedural posture of this case, the Court does not apply Strickland directly.  Rather, in a § 2254 proceeding, habeas corpus relief is appropriate only if the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts.  "[T]o be unreasonable is more than to be incorrect in some absolute sense of the term.  It means instead a conclusion 'lying well outside the boundaries of permissible differences of opinion.'" Raygoza v. Hulick, 474 F.3d 958, 963 (7th Cir. 2007), citing Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002).

At trial, Kehoe's stepdaugter, J.R., testified that on September 28, 1999, she was 12 years old and stayed home from school with Kehoe because she was sick.  (Trial Tr. 5-6)  She doesn't remember what time she got up, but it "wasn't early." Id., at 6.  She got up and

went into the bathroom.  Id., at 7.  Kehoe came into the bathroom, grabbed her by the arm, and pushed her down on the floor.  Id., at 8.  She hit her head on the windowsill as she fell. Id.  She screamed and tried to pull herself up or push him away.  Id., at 10, 29.  He pulled off her shorts and underwear and raped her by putting his penis into her vagina.  Id., at 9-10.  Kehoe then instructed her that if she told anyone what had happened, he would kill her, her mom, and the kids.  Id., at 11.  It was two years before she ever told anyone what had happened because she wanted to wait until her mom "was safe" after getting remarried and moving to a new house.  Id.  J.R.'s mom and Kehoe split up in April 2000, and she first told her ex-boyfriend about the rape in September 2002.  By that time, the "household was stable" and "they had somebody there to protect them."  Id., at 21.  Her mom's new husband "wasn't going anywhere" and "she was safe."  Id., at 22.

During the time between her mother's separation and the time she told someone about being raped, she sometimes went to go visit Kehoe when her brother and sister were going.  Id., at 18.  She wanted to go along because she didn't want them there alone.  Id. There were other times when she did not go because she had something else to do or wasn't speaking to him.  Id., at 19.  When she didn't go with them, she had her sister call her at night, and she would have been able to tell if there was something wrong.  Id., at 20.

She told her boyfriend at the time because things started to be sexual between them, and she had a panic attack.  Id., at 22.  Her boyfriend convinced her to tell her counselor at school, and the counselor notified DCFS.  Id., at 22-23.  DCFS came to the school that day to talk to her, and she told her mom that night.  Id., at 23.  When asked how she could remember the exact date that the incident occurred, she responded, "I don't know."  Id.  She also acknowledged that when interviewed by DCFS, she couldn't give a precise date and

could only identify the time frame as in the fall because it was raining, and there were leaves on the ground.  Id., at 24.  She further stated, "somebody could have said something between now and then.  I just know now that it is that day."  Id., at 25.  However, J.R. admitted that she remembered more two years earlier when she was interviewed by DCFS and that her recollection had been better then.  Id., at 27.  She also indicated that she had a nervous breakdown that required hospitalization in April and July of 2003.  Id., at 37.

After the separation, in addition to sometimes going to visit Kehoe, she talked to him on the phone and wrote him letters.  Id., at 39-40.  She got upset when he began drinking again, got a new girlfriend that she didn't like, and told her that he couldn't help pay for her to go to modeling school.  Id., at 40-41.  She was angry that he had abandoned her.  Id., at 45.  She continued to call him "Dad" and wrote him letters stating that she wished he was there and that she loved him.  Id., at 47-49.  Another letter stated that the only time she had fun was when she was with him and that she would come to see him on her own if her mom wouldn't let her go.  Id., at 50.  She even indicated that she wanted to leave her mom's house and come live with Kehoe.  Id., at 52.

At some point, J.R. became aware that Kehoe was going to try to get custody of her brother and sister.  Id., at 64-67.  She was upset about this, because she didn't want them to be taken away from her.  Id., at 67.  After she made the allegations that Kehoe had raped her, he hasn't had any contact with her brother and sister and did not get custody of them. Id.

In ruling at the conclusion of the bench trial, the judge made the following findings:

> My review of J.R.'s testimony discloses that during the course of her testimony, she presented a very compelling, authentic dimension that it was corroborative of the clear and confident

and certain testimony that she gave. It was compelling to me that frequently, at very difficult times, she would be on the verge of crying, tearing up, and physically shaking during the course of her testimony.

Despite that, she gave testimony that clearly, if believed, would make out a case of predatory criminal sexual assault by this defendant. And there were raised by her testimony circumstances which I think both counsel are willing to concede are theories rather than hard evidence. They are just theories, which is to say that there are certain circumstances arrayed before the Court that are arguably inconsistent with the clear meaning of J.R.'s direct evidence, her testimony.

And, yet, I think in fairness, we have to say that those circumstances arrayed in virtually the same sequence as they have been given to us are just as arguably consistent with corroborative of her testimony. And I think it depends to a large extent on how one defines logic in a highly emotional, stressful situation such as the one described here, which is a highly emotional, family violence sexual abuse situation.

In other words, is it logical that a rape victim, 12 years old, would continue a relationship with the rapist, a person who was always, in her words, her father. Can you be afraid of someone and still love him? Can you be afraid of him and still say loving things to him and about him? Is loving behavior per se, contradictory to the assertion of being a victim of family violence?

I think if we examine our consciences and, basically, I am suggesting that I have examined mine, we know that those are not incompatible realities. They are morally incompatible. It is just unbelievable to someone who needs to maintain an ordered universe of moral values it is just unbelievable to think such things can happen. But we know that such things happen. And, yes, people can be afraid and still love.

And J.R. was very candid about the fact that we have all always loved him. And that must mean that he is a good person, and that they need him. And it doesn't, indeed, foreclose that he loves them. None of that is incompatible with the allegations that J.R. has made and testified to in considerable detail.

We go on and on about the nature of her motivation as disclosed by the letters. And I think the best we can say is that those motivation exercises that we are talking about are speculative. If we look at those letters from an adult model, of course it is logically inconsistent with being a rape victim to say that I love you and I need you, from the lucid objectivity of adults looking back on conduct, which they almost certainly need to find a way to say didn't happen.

But if we are looking at it from the logic of being a child victim of sexual abuse or the victim of family member violence, we know that the motivations are far more complex and conflicting. And if they were not complex and conflicting, we would know then that would be a sign of something not being authentic.

But here are a couple of very specific things that I think are helpful to the court in resolving the question of whether or not this testimony is authentic, whether or not it meets the burden of proof. Referring to J.R.'s testimony. If she is motivated to lie, which, of course, is the inference that has to be drawn to some reasonable level of identifying it as a motive to lie before it can possibly become reasonable doubt, and possibly is lying about the custody claim that the defendant was preparing to make. And absent that, there is no suggestion of a motivation to lie other than that at this point in the record.

The question of who the disclosure was made to I think resolves the issue of whether or not that is really a reasonable doubt. Because she first disclosed to her boyfriend. And where do you go if you are trying to defeat the taking of these stepsiblings from you, if you are trying to get your innocent stepfather in trouble, where do you go? Do you tell it to your boyfriend, or do you tell it to your mother, or do you go straight to the police?

I would submit that telling it to her boyfriend, her close friend, is much more consistent with her being truthful about what she was saying, because it was hugely embarrassing information that would not be disclosed to someone like a boyfriend unless she felt some particularized need to do so.

And what was that? Why in the world would she be lying if she mentioned her relationship with her boyfriend was becoming sexual? And she was experiencing panic. And she needed to explain why she was acting the way she was acting.

- 9 -

> And then, as Mr. Luckman indicated, there are certain narrative details in the description of the event that are too photographic, too tactile to have simply been invented in a retrospective exercise motivated by the desire to lie. Head bumping on the window sill. Where does that come from if it was invented?
>
> J.R. is telling the truth. And it is time that the truth be adjudicated to be the truth. Defendant is guilty. Court finds the defendant guilty, enters judgment of conviction on that finding.

Id., at 101-05.

Thus, after noting the inconsistencies and speculative issues attendant to J.R.'s testimony, the trial judge unequivocally found that J.R. had testified truthfully. In a federal habeas corpus proceeding, this factual finding must be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In his post-conviction proceedings, Kehoe attempted to rebut this finding by claiming ineffective assistance of counsel for failing to offer documents from his employer and the testimony of co-workers to the effect that he had been at work on September 28, 1999, and had been sober. His trial attorney further testified that he had not followed up on attempting to establish an alibi by comparing Kehoe's work records to J.R.'s absences from school during the fall of 1999.

The state court denied Kehoe's claim in a written order, finding that the evidence, even when taken in the light most favorable to Kehoe, did not foreclose the possibility that he had the opportunity to commit the offense before 9:00 am on that day or on some other day that J.R. was absent from school during that time frame. In fact, the judge noted that rather than serving as a meaningful alibi, the evidence actually established that Kehoe had the opportunity to commit the assault on September 28, 1999, before arriving at work at approximately 9:00 am. The judge further found that even if she had been mistaken about

the date of the offense, J.R.'s testimony had credibly established that the offense occurred sometime "in or about September 1999" as charged.

The trial judge concluded that even if Kehoe's attorney had failed to identify or pursue the alleged alibi evidence and thereby fell below the standard of care, Kehoe was not prejudiced by the failure because the evidence would not have altered the outcome of the trial. Given the absence of evidence corroborating the testimony that Kehoe was home with J.R. at the time of the assault, the judge indicated that he had to focus exclusively on her believability by considering her demeanor, narrative detail of the offense, and lack of motive to fabricate the allegations. As the purported alibi evidence would have confirmed that Kehoe was in fact home with J.R. during a portion of the morning hours on September 28, 1999, the judge concluded that the outcome of the trial would not have been different even had the evidence been presented. Kehoe therefore failed to establish prejudice under Strickland, and his ineffective assistance of counsel claim was denied.

On appeal from the denial of his post-conviction petition, Kehoe argued that he had satisfied the standard for establishing his ineffective assistance of counsel claim. The Illinois Appellate Court reviewed the evidence of record establishing his whereabouts on the date in question, as well as evidence regarding counsel's awareness of a possible alibi defense. The court noted that during the third stage of the post-conviction process, the defendant has the burden of making a substantial showing of a constitutional violation and that the fact-finding and credibility determinations of the circuit court would not be reversed unless manifestly erroneous.

The Illinois Appellate Court rejected the argument that the trial court had imposed a higher standard than that required by law in resolving Kehoe's ineffective assistance

claim, noting that the trial court concluded that Kehoe had failed to establish prejudice because his alibi evidence would not have altered the outcome of the trial.  The court then found that the factual and credibility determinations made by the trial court following the evidentiary hearing were not manifestly erroneous as the evidence presented did not provide him with a meaningful alibi and therefore failed to establish the prejudice required to support his ineffective assistance claim.

To warrant federal habeas relief, Kehoe must show that the state court decisions were either: (1)  contrary to or an unreasonable application of clearly established Federal law as determined by the United States Supreme Court or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Kehoe argues that the state court decisions were an unreasonable application of federal law, suggesting that both state courts applied a more stringent standard for determining prejudice than that required by Strickland.  To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome."  Strickland, 466 U.S. at 694.

Kehoe focuses on language by the state courts that the evidence would not have "foreclosed" the possibility that he had the opportunity to commit the offense, arguing that the state courts were unwilling to properly apply Strickland absent an airtight alibi defense. He contends that the state courts erroneously applied a higher standard of a showing that "would have altered the outcome" of the trial.

A review of the record reveals that the trial court found that "taken in its best light on behalf of Defendant-Petitioner, the evidence does not foreclose the Defendant-Petitioner

from having the opportunity to commit the offense during the morning hours before approximately 9:00 AM on September 28, 1999," and that "the alibi proffered by the evidence actually serves to affirmatively establish the Defendant-Petitioner's access to the victim and opportunity to commit the offense." (Exhibit O at 1-2) The trial court further noted:

> Would the evidence have altered the outcome? For all of the foregoing reasons, the answer is in the negative. At the trial, the absence of evidence corroborating the victim's testimony that the Defendant-Petitioner was at home with her at the time of the assault caused the trier of fact to focus exclusively on the believability of the victim, with the only references thereto being the demeanor of the victim, her narrative detailing of the occurrence, and the essential absence (in the court's view) of any motive of the victim to fabricate her accusation. Assuming the Defendant-Petitioner's alibi evidence was not discredited by the State . . . such evidence nonetheless would have corroborated the victim's testimony that Defendant-Petitioner was home alone with her on September 28, 1999 after the time she was ordinarily at school.
>
> * * *
>
> The Court FINDS that neither trial counsel, James Casson, nor post-trial counsel, Mark Johnson, were constitutionally ineffective, and FINDS further that had the purported alibi been presented at the time of trial the outcome would not likely have been different.

(Exhibit O at 2-3)

In addressing this argument on appeal, the Appellate Court found that the objected to language "simply referred to its factual finding that defendant's proffered evidence failed to establish a meaningful alibi and, instead, showed his opportunity to commit the crime." (Exhibit L at 15) In other words, the purported alibi evidence was found to be insufficient to overcome or even call into question the trial court's factual and credibility findings that

J.R.'s testimony was truthful, as would have been necessary to have afforded a reasonable chance of being acquitted. This is not, as Kehoe suggests, a conclusion "lying well outside the boundaries of permissible differences of opinion." *See* Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002).

The Appellate Court then went on to say that, "Based on that finding, the court concluded defendant failed to establish prejudice because his alleged alibi evidence would not have altered the outcome of his trial." Id. Had the court stopped there, and had the trial court not stated that "the outcome would not **likely** have been different," Kehoe may have had a better argument. However, the Appellate Court went on to conclude that "the circuit court's decision was not manifestly erroneous and it did not err by finding defendant failed to establish a **reasonable probability** that the result of his trial would have been different if his alibi evidence had been presented." Id. This is insufficient to support a finding that the state courts used a standard contrary to that set forth in Strickland. Johnson v. Loftus, 518 F.3d 453, 456-57 (7th Cir. 2008) (finding that although a state court had at one point identified the standard as whether "but for defense counsel's deficient performance, the result of the proceeding would have been different," the subsequent statement that the defendant had not shown a "'reasonable possibility' that the outcome would have been different" was sufficient.) Accordingly, Kehoe's claim that he is entitled to relief because the state court applied an incorrect standard in resolving his ineffective assistance claim must fail.[1]

_____

[1] The Court notes that this case is not analogous to Raygoza v. Hulick, 474 F.3d 958, 965 (7th Cir. 2007), where the absence of credible alibi witnesses was a "significant, if not dispositive, factor in both the original guilty verdict and the denial of the motion for new trial." Here, the alibi evidence presented during the post-conviction proceedings was

With respect to any attempt to establish that the state court decisions were based on an unreasonable determination of the facts, the Court observes that Kehoe spends a good portion of his traverse quibbling with the Respondent's presentation of the facts in its brief, accusing the Respondent of presenting a misleading and incomplete factual scenario in its response.  Yet this is not his burden in establishing his entitlement to habeas corpus relief, as it is the state court's determination of the facts that is at issue.

In federal habeas proceedings, the state court's findings of fact are presumed correct absent "clear and convincing evidence" rebutting such findings.  28 U.S.C. § 2254(e)(1); McAfee v. Thurmer, ___ F.3d ___, 2009 WL 4573701, at *1 (7th Cir. Dec. 8, 2009).  Kehoe is essentially asking this Court to re-evaluate the credibility of the trial witnesses.  This is something a district court conducting habeas corpus review pursuant to § 2254 cannot do. Schlup, 115 S.Ct. at 868; United States v. Kellum, 42 F.3d 1087, 1091 (7th Cir. 1994).  In conducting this review, a court "neither weighs the evidence nor assesses the credibility of witnesses, even when the evidence at trial is totally uncorroborated."  United States v. Davis, 15 F.3d 1393, 1397-98 (7th Cir. 1994).

Upon review of the facts contained in the state court record, this Court cannot find that the state court's determination that J.R.'s testimony was credible and sufficient to find beyond a reasonable doubt that Kehoe raped her exceeds the bounds of reasonableness. Her testimony provided a detailed account of the assault that was plausible, straightforward, and consistent.  While there may have been minor discrepancies or inconsistencies with other aspects of her testimony, they do not detract from the reasonableness of her

_____

presumed to be credible, yet even with that presumption, was not dispositive.

- 15 -

testimony regarding the assault itself.  Nor can the Court find that the state court's finding

that his alibi evidence would not have had a reasonable probability of changing the outcome

of the trial if it had been presented exceeds the bounds of reasonableness.  There has

certainly been no presentation of "clear and convincing evidence" sufficient to rebut these

factual findings.  Accordingly, the state court determination "must be respected--not

because it is right, or because federal courts must abandon their independent

decisionmaking, but because the grave remedy of upsetting a judgment entered by another

judicial system after full litigation must be reserved for grave occasions."  Gomez, 106 F.3d

at 201.  Thus, he has failed to demonstrate prejudice from the alleged ineffective assistance

of counsel, and Kehoe's petition for writ of habeas corpus must be denied with respect to

this claim.

2.    Due Process Claim

Kehoe's second challenge is that he was denied due process in that he was denied

his right to confront the witnesses against him.  No expert testimony was introduced at trial

to explain J.R.'s failure to report the alleged abuse for several years.  In addressing this

issue, the trial judge relied on his personal understanding of how child sexual abuse victims

behave, stating that but for this personal understanding, he "would be viewing the evidence

considerably differently."  Accordingly, Kehoe maintains that the Judge essentially became

a witness in the trial that he could not confront.

However, claims of this nature have been rejected in this circuit and by the Supreme

Court.  In Simonson v. Hepp, 549 F.3d 1101, 1107 (7th Cir. 2008), the Seventh Circuit cited

Barclay v. Florida, 463 U.S. 939, 950 (1983), in noting that the Supreme Court has rejected

the idea that a judge relying on his own experience in reaching a decision "is somehow

improper . . . [i]t is neither possible nor desirable for a person to whom the State entrusts

an important judgment to decide in a vacuum, as if he had no experiences."  In Simonson,

the defendant argued that the trial judge had impermissibly relied on undisclosed evidence

regarding rates of recidivism in child molesters in imposing sentence when he noted that

"individuals who undertake this type of behavior typically do it more than once."  Id.  The

Seventh Circuit found that the sentencing judge relied on his experience that offenders like

the defendant have a high rate of recidivism and that the defendant had failed to prove that

prove that his experience was inaccurate.  Id., at 1108.  This holding is equally applicable

here, where Kehoe challenges the judge's use of personal experience regarding the

behavior of child sexual abuse victims, but offers no evidence that would tend to prove that

the judge's experience was inaccurate.

Although Kehoe characterizes the trial court's ruling somewhat differently, the actual

ruling was as follows:

> There isn't any question that there was delayed disclosure in
> this case.  And if that were a fact that was consistent only with
> the notion that such delayed disclosure was inherently suspect
> as opposed to characteristic indeed normative of the
> victimization, sexual victimization of children, I would be viewing
> the evidence considerably differently.  At the very least, it has
> to be observed that delayed disclosure could be consistent with
> not being truthful.  It could be viewed as consistent with having
> been afraid to disclose the truth sooner.
>
> The Court does not believe it is fair to characterize the evidence
> as not being corroborative of the victim's testimony.  It is fair to
> say that there is not an abundance of corroborative evidence;
> but when you consider the victim's testimony, her demeanor on
> the stand, and those indications of authenticity that were
> characterized in her testimony by the rendering of details which
> in the Court's opinion could not have been rendered without the
> substance of her testimony being true, narrative details that
> would have required the kind of fictionalizing skill that we

> associate with great novelists, the replication of a persistent
> dream state that would have to be consistent with that kind of
> fictionalizing skill, or someone who is simply experiencing a
> complete psychotic break from reality.   Neither of those
> circumstances are the least bit suggested by this evidence.
> There is no question in the Court's mind that the victim was
> telling the truth.

(Exhibit B at 18-19).

In addressing this claim on direct appeal, the Illinois Appellate Court found that the

trial judge properly relied on his own observations and life experiences in evaluating J.R.'s

credibility in light of the evidence presented at trial.

> We reject defendant's contention that the trial court's finding
> was not based on the evidence presented at trial.   Defendant,
> again, takes the trial court's statements out of context.   The trial
> court recognized, both in finding defendant guilty and at the
> hearing on the posttrial motion, that J.R.;s behavior following
> the alleged rape could be construed as both consistent and
> inconsistent with being sexually assaulted.   In making its
> rulings, the trial court specifically stated it considered J.R.'s
> testimony that she loved defendant and has always considered
> him to be her father.   At the same time, J.R. testified that she
> was terrified by defendant's threat and had tried to block the
> incident from her mind.   Given J.R.'s ambivalence toward the
> defendant, her age, and the obvious stress and emotional a
> sexual assault can have on a victim, the court found that J.R.'s
> actions were not inconsistent with her allegations.   The court
> found J.R.'s testimony to be clear and compelling and her
> version of events to be authentic.

(Exhibit F at 11-12).

The Illinois Appellate Court cited People v. Rogers, 16 Ill.2d 175, 181-82 (Ill. 1959),

for the proposition that a trier of fact may consider the evidence in light of its own knowledge

and life experience.   Rogers considered and approved the use of a jury instruction quite

similar to that presented in Seventh Circuit Pattern Criminal Jury Instruction 1.04, which

provides, "You should use common sense in weighing the evidence and consider the

evidence in light of your own observations in life."  Whether the trier of fact is a jury or a judge, this same principle applies and is consistent with federal law as set forth in <u>Simonson</u> and <u>Barclay</u>.  The Appellate Court then cited <u>People v. Escobedo</u>, 151 Ill.App.3d 69, 82-83 (1986), which offers the caution that a court should not be "unmindful that the shame, guilt, or embarrassment which a child suffers when victimized excuses a delay in the minor's disclosure of such incidents."

In upholding the conviction, the Illinois Appellate Court acknowledged that the trial court was in the best position to evaluate J.R.'s credibility and had found her testimony to be clear, certain, and compelling with respect to the details of the rape.  "The court also emphasized J.R.'s demeanor, specifically noting that she was visibly distressed during her testimony."

While the trial judge made at least one extraneous remark regarding his personal experience, when considered in context of the remainder of his decision, the record reveals that the trial judge properly considered the alternative theories and arguable impeachment presented by Kehoe and then assessed J.R.'s credibility based on the evidence presented at trial.  As set forth previously, this finding of credibility will not be disturbed absent clear and compelling evidence to the contrary that has not been presented here.  Kehoe has therefore failed to demonstrate a denial of due process or that the state court determination was based on an unreasonable determination of the facts.

**CONCLUSION**

For the reasons set forth herein, Kehoe's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [#1] is DENIED.  This matter is now terminated.

ENTERED this 28th day of December, 2009.


s/ Michael M. Mihm
Michael M. Mihm
United States District Judge